Good morning, and may it please the Court, Kathleen Hartnett, on behalf of the structure entities and Dr. Stephens. I'd like to reserve four minutes for rebuttal, and we'll watch the clock. All right. Your Honors, there are multiple independent reasons that the Court should reverse the district court's order and compel arbitration. Statutory interpretation, waiver, and failure to state a claim. I will address these in turn, and, of course, welcome the Court's questions. First and the most straightforward resolution is to reverse the district court's ruling misinterpreting the EFAA to allow something that Congress never provided for, which is a plaintiff who elects to proceed in arbitration and then purports to withdraw from the arbitration after over a year of arbitrating, and then refiling suit in court, adding a sexual harassment claim in an attempt to avoid further arbitration, even though, as the district court recognized in its opinion, and this is at ER 30, that the plaintiff's non-sexual harassment claims are based on the same underlying facts as the sexual harassment claim. So we would respectfully submit there's no support in the EFAA for this use of the statute. This is not a criticism of the EFAA or an attempt to limit it. It's an attempt to apply it. And the one other court that has reached a similar – that's been presented with a similar issue is the Ramirez case in Colorado, reached the same conclusion that a withdrawal and then attempt to move to court after starting an arbitration is improper under the EFAA. The EFAA's language – Robertson, what – you know, the withdrawal was actually based on the California provision about the payment of late fees and not under the EFAA. So how does that affect your argument? I understand your point that you argue that it's preempted by the FAA, but if the mechanism of withdrawal is not actually under the EFAA, are we dealing with a withdrawal claim or an election to proceed with a new claim? That's a great question. I think either way you look at it, the EFAA doesn't support it. The district court looked at it more through the election lens. But let me just one quick update for the court on the CCP ground, the actual ground that was the purported basis for the withdrawal. In 2025, the California Supreme Court in the Hohenschel case – and this is not in the briefs because it wasn't raised as an alternative ground for affirmance or something else – has actually determined that essentially you can still challenge – basically you can get relief from a nonpayment if the nonperformance is not willful, fraudulent, or grossly negligent. And so the California Supreme Court has clarified that the kind of technically, you know, kind of harsh reading of 1291.98 is not the right reading of the statute. And so even though here the district court applied a kind of technically harsh reading of the statute and found it preempted, the California Supreme Court has since basically held that that would not have been an appropriate basis for withdrawal. So I just wanted to bring that to the court's attention if there's curiosity about what the status would be of the FAA preemption claim. But the point you're making, and I think the basis was supposedly under the CCP rule and not under the EFAA. And so what really should have happened is once the district court at that point determining that the CCP rule was preempted, it should have sent the case back without anything further because there's nothing in the EFAA that would have purported to allow the withdrawal. And we point this out in our brief, but the CCP provision expressly provides that a party can withdraw upon the non-payment. There's no language in the EFAA. And I take it your argument about the EFAA is election and waiver are almost two sides to the to the same coin. I actually think it's partially that withdrawal and election are kind of two sides of the same coin. It doesn't allow the withdrawal and it doesn't kind of allow you to re-elect later. What the judge below did was sort of just look with tunnel vision at the what was before her and said, OK, you're facing a motion to compel arbitration. You're opposing it. At that point, you're electing. So what statutory language are you relying on for waiver since EFAA does not speak to waiver itself? The word waiver is not in there. No, that's fair. And we in our brief points out it doesn't expressly say that. But the court has generally read into statutes like this that they would be a waivable right. And so but I do think we have two separate arguments that the plaintiff has blurred into one. One is just a statutory interpretation argument that there was no basis for either a withdrawal under the EFAA or a re-election under the EFAA because Section 402A allows for an election. And then separately, even if the statute was allowed to account for some situation where you could withdraw or re-elect here, there was a waiver because even if they had had some right to do that by arbitrating for an entire year, they had waived that right under the cases from this court, the Nguyen case. And then we cite some other cases. I mean, I understood the beginning of your argument to be that you were going to make a statutory interpretation argument. And so that's what I'm waiting for. What what within the EFAA statute says that plaintiff was not allowed to make an election upon discovering, you know, sexual harassment claims? And I know you dispute the discovery piece as well. But just to start with the statutory interpretation, what is it about the statute that we should look to? That it doesn't provide for withdrawal or re-election, but simply election. So it's the language that is in the statute. I'm just referring to the 9 U.S.C. 402A, which is the in our addendum at the election of the person alleging conduct constituting a sexual harassment dispute. They can, you know, why can't a person be in arbitration, discover a sexual harassment claim pending through discovery and elect then to pursue that claim in state or federal court? Why is that not permitted by the statute? Just because the language of the statute provides for an election and not a not a additional election after you've commenced. So that that would be the statutory interpretation argument. Full stop. So what what what authority do you rely on for the notion that if the statute doesn't specifically say withdrawal, it's not permitted? Just the canons of statutory construction that we cited and also the example of the CCP in our brief where they actually in that case, the California legislature provided for withdrawal as a potential remedy upon a nonpayment, not just an election. And we also cited an environmental statute that similarly envisions a withdrawal. So, counsel, is it your argument that the statute contemplates either arbitration or an action under the under under the statute? Correct. But not both. That's right. And that's what the and just two things on that point. One is I understand the point. What if something was discovered later? Did Congress really mean to exclude it? I think our point of view would be the FAA is the overall policy for arbitration. Our reply brief talks about how this was supposed to be a narrow exception to for sexual assault and sexual harassment. And we have to apply the language as we find it. And this doesn't contemplate a withdrawal in the first place. So there was no real basis for her to even come out of the arbitration, nor a reelection, assuming that she could be in front of the district court at that point. Well, let me let me posit this. You know, if we're interpreting the plain meaning of election, there are different definitions that speak to something knowing or intentional or something where there's knowledge that that precedes that act of electing or choosing. And as plaintiffs are arguing, she was not aware of a sexual, a viable sexual harassment claim at the time that arbitration was was occurring. And the district court seemed to agree and said, well, I don't find any evidence that she intentionally chose not to pursue a sexual harassment claim. So why, you know, to go back to my earlier question, why wouldn't that interpretation of the statute permit her upon this discovery of something new to to then elect to proceed in state court instead of arbitration? So on the way the district court read it, it was not dependent on whether or not it was something new. The district court pointed that out as one of the reasons, but also said that, for example, a plaintiff could bring their claims, not mount the sexual harassment claim at first, wait to see if there was some larger support or additional evidence, and then bring the claim. And so I think our main point there would just be the statute does not provide for it. It clearly provides a choice. And there would really be a very negative incentive here then to bring an arbitration, withhold a sexual harassment claim in particular to see how things are going in arbitration and then pick out a couple of pieces of evidence that you've found in arbitration to say now that you see you have a sexual harassment claim and to try to move to federal court. That is what about the alternative possibility? Let's say someone is going into arbitration thinking they have a certain set of claims. They go through arbitration discovery and then they realize actually the motivating factor or at least one of the motivating factors behind this discrimination that I experience or harassment is, you know, something gender based. Could that person then elect knowing now a real choice to do this under the EFAA? I think we would say no in the terms that that would stretch elect too far when you're looking at the legislative history and even just the plain meaning of the word, it's to make a choice. And she already chose the arbitration form. And that's kind of you get your chance in a case where, as I said, the district court noted the corpus of evidence was the same, except and this is where I do want to I hesitate to go too far in the weeds, but they're really important here. The district court was under a misimpression that discovery had created some brand new revelation that wasn't available to the plaintiff before. And that is not true because sexual harassment is based on the notion of how you're being treated. The plaintiff brought a harassment claim in arbitration initially, but claimed national origin, not gender. And then so that would mean that they had some at that point some basis to believe that they were in a harassing environment and it wasn't until later. And so the only two things, and this is really critical and I the court may have already looked at this, but I would urge you to do so. The phenotype email that was 3ER359 and that does and that basically lists two potential candidates that would be good fits for the role based on their experience. They both were men. And if that would be enough to take, say, here's examples of people I'm looking for and there are two men to take the perceived experience and to shift it to sexual harassment, we submit it doesn't bear that weight. And this is really important as well. There's a narrative in the complaint adopted by the district court without scrutiny that the board somehow was pro-diversity and Dr. Stevens was anti-diversity and that's how we ended up in this situation. There is no support in the record. This has been subject to full discovery. There's no support for those allegations in the complaint. And I would direct the court to 3ER297 to 299. That's Dr. Stevens' deposition testimony, which makes clear that he was the one that was helping to run the search. He agrees in questioning from plaintiff's counsel that he asked for gender diversity and other diversity to be part of that search. So we would respectfully submit that even if there was room in elect to do the work, even if there's some room in the analysis of waiver to do this work for a case where there really was something revelatory and new, that here this really was not that situation. It's paragraphs 16 and 17 of the amended complaint are conclusory allegations that the board had some other motive that is not supported by the record. Before you run out of time, I want to be sure you have a chance to address, if we get past waiver and election, why doesn't this allege a sexual harassment dispute? Yes, I realize I've already, I'm happy to address both those things. Under California law, we would say, I mean there are three reasons. You have to have objective, conduct that objectively constitutes harassment. We made that argument in our brief and we didn't see it responded to in theirs. They may just be saying, well, that's, we just are saying the conduct is that. But the subjective prong is actually important, and they have resisted the notion that there is this need to have subjectively experienced the harassment as gender harassment, but we would respect, we would direct the court to Jones and to Nichols. In both of those cases, it was clear that the court required in Jones, the person said she didn't know if the harassment was based on gender or race, and that made it not enough to be subjectively perceived as gender harassment in Nichols, likewise. So, I mean, as, and this is a question of, do you agree this is a question of California law at this point? Well, yeah, so there's basically a California harassment claim. There's also the New York claims, but it's a state law question. It is for both California and New York law. Okay. And because, you know, as a matter of sort of ordinary understanding and maybe federal law as well, you know, sexual harassment I think is ordinarily thought of as harassment that is sexual in nature, but as I read the California cases, you can have sexual harassment that is, where the harassment itself is not of a sexual nature, but it's based on the gender of the plaintiff. And do you agree that that is a correct view of California law? New York is in the camp that you've described, and I think that was well articulated in Singh. Although, even if you don't, for an alternative view to the Singh view that still understands the problem with the decision in this case, I would direct the court to Owens on the New York side, because Owens said, no, we're not going to go as far to say it has to be sexual in New York, but it has to be more than just you treated me differently because of gender, and in fact said basically Singh wouldn't pass that test. So I think between Singh and Owens, New York is covered, and then for California I think you do have to look at the places that we think would do the work for the if we get to that analysis, would be the subjective perception, which was admittedly not gender-based at the time, and the severe and pervasive, and the argument that the new California statute was a complete sea change is not correct. It did make a new direction to courts interpreting California law, but it retained the severe and pervasive requirement, and here there are not allegations that anything was one, any one incident was severe with respect to gender or pervasive. She worked there for four months. Do you see a distinction between discrimination based on gender and harassment based on gender, or has the California, has California merged those two? That's the difficulty I had with this case, is different treatment based on gender is not harassment. That's discrimination. And so that's where I have the different that's where I have a problem with the way this case has been couched, because to me the discrimination and harassment have been kind of merged. Your Honor, just I think we agree with you 100 percent. Congress agreed 100 percent by saying they were going to carve out sexual harassment claims, not gender discrimination writ large. New York has not had to distinguish between the two because it's sort of under one test, but the courts have been trying to grapple with what's sexual harassment versus gender discrimination in New York post-EFAA, in California likewise. There is a distinction. They are different things. And here I think what we have at most is an effort to avoid arbitration that was being preceded as going too slowly by adding on a claim that at most would be gender discrimination, not sexual harassment. I mean, just so I understand the distinction, I mean, so imagine a hypothetical under California law. You have a supervisor who doesn't think that there should be women in his office because he doesn't like women. And so when he goes by the office of the female employees, he throws a pencil at them and he steals their lunch from the break room and goes to the parking lot and lets the air out of their tires. Would that be a FIHA sexual harassment claim? If it was subjectively perceived as harassment based on gender and it was actually changing the situation in the workplace to make it unbearable and was something that he didn't do that to all the men employees as well, then yes. I think that is the difference that we would see in the way — and that's what Congress said. Look, to each State, we're not saying you have to — we're not creating a Federal law here of EFAA harassment. And so under New York, we feel like that one is not — clearly not the facts of this case. And in California, the issue is that these were not a situation where there was a environment being created in which women were somehow being treated differently or lesser. This person has a problem with the fact that they were terminated and they believe that's on the basis of their gender. And what — I'm just going to say, Title VII works the same way, right? There's a distinction between sexual harassment and discrimination claims, but you can raise a hostile work environment claim that might be gender-based, even if there's no sexual connotation behind it. Yes. And that's what the New York cases have actually been trying to grapple with that line, what's their sexual harassment versus gender-based harassment. And it does somewhat depend on how the State itself views the law, because the EFAA directs the Court to look to the relevant State or Federal law to figure out have they alleged a claim of sexual harassment. At some level, because New York doesn't have its own claim of sexual harassment, you could have just stopped the analysis there and say that's not how New York thinks about it. There isn't a way to get out of arbitration under the EFAA. But what the courts have done is to try to parse, okay, what counts as sexual harassment versus possibly gender discrimination or gender-based harassment that's not sexual harassment. But I do think California doesn't seem to have the same hard and fast sexual line that the courts have gleaned in New York. Well, it still has the severe and pervasive.  Correct. Which I have some difficulty with here with the e-mail. And I just, pervasive means more than once or continuing at a level that's higher than just different treatment. That's the difficulty I'm having with some of the facts in this case. Well, and we tried to cite in our briefs the types of things that counted and have counted as severe and pervasive, which are of a different league entirely from this case. There is the new legislation. But as we cited the Beltran case and others have made clear, it's not like that erased all the law before. It targeted, as you will see when you look at the legislation, certain specific decisions that they believe were outliers, such as, for example, one act wouldn't be enough for severe. It's now clear one act could be enough if it were severe. We don't have any of that here. Okay. All right. And can you just, what is the authority for the proposition that it needs to be perceived subjectively, not only as harassment, but as harassment based on gender, and that it needs to be perceived that way at the time, as opposed to, you know, she understands later that, oh, that's why it was being harassed? It's a good question. And because a lot of the cases, it's just obvious due to the nature of the comments or the conduct. I think the best two cases we have for that proposition would be the Jones case, the California case, where that's where she basically the complainant was unable to identify what the basis was or her perception of it. And then Nichols also. Did you say Nichols? Nichols. Because there, in the subjective analysis, they try to say that, oh, that's the subjective was separate from the because of sex analysis in Nichols. But in Nichols, in the subjective analysis, it said he viewed relentless verbal affronts as sexual harassment, meaning he viewed it as that at the time. So there's not a case that's as perfectly clear as we'd like, but we believe that Jones and Nichols together make clear that the subjective requirement is there. It's usually there just by self-evidently if it's sexual nature or expressed gender comments. Here, which is actually something I think only in our favor, there weren't expressed gender comments. And so that just is a little bit more of an outlier fact pattern because it's not harassment. Roberts. Thank you. Thank you, counsel. We'll give you a couple of minutes for rebuttal. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Melissa Zoni for Appelli, Dr. Ding. I will be addressing the waiver portion of the argument and my colleague, Mariah Noah, the issues of plausibly pled claims. We appreciate you allowing us to split our time. The Enforced Arbitration Act provides survivors of workplace sex harassment a unique and powerful choice. That choice is a real choice is a right that cannot be inadvertently waived. Appellant has a burden this morning to establish by clear and convincing evidence that any alleged waiver by Dr. Ding was clear, knowing, and voluntary. And there are two issues here. First, appellant has presented no such evidence. The district court correctly found that there is no clear and convincing evidence that Dr. Ding made that choice and waived her right with these facts. Well, opposing counsel is couching this as a matter of statutory interpretation. What does the word election mean? And does that allow someone to, because this is all under the umbrella of the FAA, and so once one begins the arbitration process, is that the election that is contemplated in the EFAA? That's the question that I have in my mind, as it's not so much as a waiver issue as to whether or not at what point has the election been made. And if an election is made to commence arbitration, then that precludes an election under the EFAA because it only speaks to one election. What's your response to that? Yes, Your Honor. If the election precludes, that is a waiver. And the way to honor the plain meaning and congressional intent of the statute is to affirm the district court's denial, because to force these claims into arbitration would be to rewrite the statute, to find that withdrawal is not allowed or that waiver occurs when any arbitration is filed. But that's not necessarily a waiver if you have the option to make an election and you elect one. Is your argument that if an individual has the opportunity to make an election, the fact of making that election constitutes a waiver of any other options? Is that your argument? No, Your Honor. Let me clarify. This is always a fact-based analysis. And so there may be circumstances when that is the case. But here, the way appellant would read it is to read into the definition of election something more, such as one-time election, a timely election, that withdrawal is never allowed from arbitration. None of those things occur in the plain meaning of the plain language of the statute. That would go beyond the statute. But would you agree that this statute was contemplated to be a narrow exception to arbitration that's contemplated under the umbrella FAA? Certainly. This is narrow in the sense that it is for a specific type of plaintiff and a specific type of case. But within those bounds, and Congress here in the statute did create limitations. It created limitations for the type of case. And it has to be filed in Federal, State, or Tribunal forum. It has to be a sexual, sex harassment, or discrimination case. It contemplated certain limitations. It did not, and purposely did not, contemplate other limitations. And so to read that in would be to limit it beyond what the meaning of this, as you point out, already narrow statute is, and would be to take away the legislative intent to allow the plaintiff within those bounds a real choice of forum. But can I, just to follow up, are you suggesting that if someone knew that they could bring a sexual harassment claim under the EFFA, but chose to pursue arbitration, goes through that process for a year, and then changes her mind and goes, that that would be permitted by the statute as well? That would be up to that district court judge to look at those facts and determine if there was clear and convincing evidence of waiver. Here, it is well established that Dr. Ding did not know until she received not just one, but six, at least six pieces of new evidence that showed her that there was a sex-based animus that motivated the conduct that she experienced. So you're saying that one could waive it by electing to go into arbitration, but there has to be clear and convincing evidence, and you're, and that's implied in the statute itself? Not implied in this statute, just the regular construct of waiver. This statute is silent as to that. And so we cannot read anything into it beyond what it says. Are there factual circumstances where the district court could find, in other facts, could find waiver? Sure. We've seen cases where that's the case. In those cases, that district court judge found clear and convincing evidence of a knowing, voluntary, and clear waiver by the plaintiff who had the EFFA right otherwise. Here, not the case. As I said, Dr. Ding found out she had a sex-based claim only after she received the discovery, after she had already been in arbitration. As we pointed out, the arbitration did not adjudicate any, anything at all, actually, beyond the procedure, whether the claims were related or not to sex, but they were not. And so she followed, and I believe as Judge Corley said in her opinion, she followed the, apologies, she followed the precise procedure that is anticipated by the EFFA. She learned that she had a sex-based claim. She filed her case in court. They moved to compel, and now that triggers her right under the EFFA to have a real choice in forum. Counsel, you would agree that the EFFA does not explicitly address the situation when an arbitration has already begun? Correct. And that is why it's our position that you cannot read into it that there is a blanket ban on withdrawing from arbitration in these circumstances. A plaintiff in Dr. Ding's circumstances would have no recourse. She discovers her sex-related claim and does what is allowed by the statute, brings the case in court. To find that there is no withdrawal would be to read beyond the statute. What's your response to opposing counsel's argument that this facilitates circumvention of the FAA? The EFFA amends in a discrete way for a discrete case in plaintiff, the FAA. And so the purpose of it is to allow a choice where there otherwise is not one. It came after the FAA. So it doesn't contradict it. But, you know, a person engaging in arbitration that sees the arbitration isn't necessarily going his or her way could then opt to try to use the EFAA to get out of the arbitration. That's the problem that's articulated by the other side. What's your response to that? One of Appellant's themes is gamesmanship, that Dr. Ding somehow participated in some complex procedural gamesmanship to get a second bite at the apple. I'm not talking about her specifically, but the whole system. Yes. How can the system work the way it's contemplated if there is this avenue for gamesmanship? We see in some of the cases how that would work. In those cases, the district court found through those facts that there was waiver. Perhaps that plaintiff made it very clear that they knew what they were doing, they knew they were waiving, and by participating in that gamesmanship, that was also a waiver. In this case, not the case at all. She didn't even know she had a claim, so she could not have conducted that kind of gamesmanship. But we see cases where, for example, take it all the way to a binding arbitration award and then want a second bite of the apple. Those courts found that that was waiver. Those facts were there. And, again, this gets back to the burden. Have any of those cases been in the EFAA context? There are hardly any cases in the EFAA context. And I believe Ramirez is the only one. And Ramirez is different for two reasons. First of all, as we discussed, the Court found clear and convincing evidence that the plaintiff knew of the sex-based claims at the time. And second, just as you described, Your Honor, it was the evidence was clear that that plaintiff did not like the way it was going, was getting bad results, and then so, again, wanted an alternative route. Here, I'll remind the Court, the only result at all that we got in the arbitration that barely got past the procedural stages was a bad result for appellant. I just wanted to ask you one final question.  Opposing counsel said everything that was alleged in the EFAA complaint was already known at the time of the arbitration. Do you agree with that? Not at all. As I mentioned, and I'm happy to walk the Court through it. No, I just wanted to know if you agreed. At least six pieces of new evidence that informed her experience. Six new pieces.  And I'll just note my colleague will talk more about what was discussed in terms of the client. We'll let your colleague discuss it.  Oh, I'm happy to go through the six. Okay. Quickly. Most importantly, the email we've discussed in which Dr. Stevens expressed his phenotype. I'll point out the phenotype is a very specific word choice. It is a set of observable characteristics. Just list them, please.  Number two, another email in which the Board of Directors indicated that, quote, gender diversity needed to be emphasized in the CFO search in order to appeal to investors. Number three, Dr. Stevens testified that he, and I'm happy to provide sites as well, Dr. Stevens testified that he relied upon sexist comments from Wall Street bankers who claimed Dr. Ding was lecturing and too aggressive to justify her termination. He used what they were saying as a justification for what he was trying to do. Number four piece of evidence, discovery confirmed that Dr. Ding was replaced not only by a man, but by a less qualified man, which showed the bias behind the decision. The phenotype was not Dr. Ding. Number five, Mr. Yoon admitted in his deposition, these are all post-arbitration, that he thought the domestic violence incident would distract Dr. Ding from her duties. And number six, Dr. Stevens admitted in his deposition that he first recommended her termination only nine days after she reported the domestic violence incident. And that's six. Thank you, counsel. Thank you. May it please the court, Mariah Noah for appellee Dr. Ding. In the wake of the Me Too movement, Congress, California, and New York, each passed legislation to expand access to the courts for victims of sex harassment at work. And Dr. Ding has plausibly pled each of her three harassment claims under these standards. First, under California law, she pleads that she subjectively felt harassed, that the environment was objectively hostile, that the harassment was severe and pervasive, and that the harassment was based on sex. And that is all that is required under California law. Ms. Noah, can you start with that? What made this alleged conduct severe and pervasive in your view? Right. Well, as I will point out to the court, and as an appellant also discussed, California did recently clarify its standard of severe and pervasiveness through section 12. It's a long section. Apologies. And that, and through the Beltran case noted that, sorry, 12-923, it clarified existing law and what constitutes workplace harassment, clarifying that the standard is lower than how other courts have been previously applying it. And the Beltran case, while it did say, yes, this wasn't a change in law, it did explicitly hold that the trial court had erred in granting summary judgment in the employer's favor because, one, it relied on authority applying the standard of severe and pervasive standard prior to that change in law, and, two, because it ignored the legislature's instruction that sex harassment is rarely appropriate for disposition on summary judgment. So here, drawing all reasonable inferences in Dr. Ding's favor, as the district court did and as the court must do here, she does plausibly plead a sex harassment case under California law. So, Counselor, is it your position that harassment no longer needs to be severe and pervasive in order to constitute sexual harassment? That is not our position, Your Honor. And the cases cited by appellants about severe and pervasiveness are either before that clarification of California law or they involve just a handful of instances over a course of a long time. The difference here is that we allege as soon as Dr. Ding started her work, almost immediately she was sidelined, she was belittled, her role was diminished, she was treated in a lot of similar ways to the plaintiff in Roby v. McKesson in the belittling, excuse me, sidelining and harassment. And all of that happened constantly during the entire course of her employment, and it happened immediately. So it was pervasive. It was severe. And, importantly, these are the types of questions that are classically for a finder of fact. These should be going to a jury to decide whether there is an inference that this was severe. We can't do summary judgment if there is no material issue of fact regarding it. If we looked at the facts and we, as a matter of law, determined it was not severe or pervasive, then summary judgment would be appropriate. At summary judgment, yes, Your Honor. But here we're, importantly, not under a summary judgment standard. The standard here that both sides agree on. When you talk about a jury, that's why I said that, because you talked about a jury having to make the decision. Right. Well, the standard here is just plausible pleading. Was it plausibly pled? And here Dr. Ding pleads that Dr. Stevens expressed that he wanted a particular phenotype. As my colleague mentioned, phenotype is a really specific word, and it's not one that I would necessarily judge. She wasn't aware of that at the time, right? That's correct. So what do you have in the pleadings that goes to the subjective perception element? Right. And as the district court noted these facts as well in her ruling, when Dr. Ding started, she was immediately and consistently sidelined. Nothing was 100% her responsibility. She was told just to read and learn her entire first year, and then she was further limited to only working in Asian markets, even though she was the CFO for the whole company and had extensive experience in New York markets. Was she aware that this IPO schedule, this sort of aggressive IPO schedule was occurring? Yes, she was. It was a part of when she was recruited. So I guess part of the argument about being sidelined is being sort of sidelined from that process of the IPO process and speaking with the bankers? Yes, absolutely, Your Honor. And it didn't match up with what her job title or her job description was supposed to be when she started. After that also, Dr. Stevens told her that investors thought she was too lecturing and aggressive, which did surprise and offend her at the time, but it wasn't until discovery later revealed that Dr. Stevens relied on those sexist comments to recommend her termination. So that kind of implies at the time that she didn't perceive it as harassment if she only realized it later. Not true, Your Honor. She perceived harassment at the time. She knew it was a hostile environment. She knew that she didn't feel welcomed. She knew that she felt like she was being pushed out. She just didn't know what the animus was behind that harassment. And as appellants point out, she did bring a national origin harassment because she thought maybe that was the reason. It wasn't until the post-arbitration discovery that she was able to find evidence that gave a reasonable and plausible inference that the animus behind the harassment was sex-based. I guess one of the becoming more important aspects is this notion that for Jones and Nichols, a person who's receiving the harassment has to be aware subjectively that it's sexual harassment or sex-based or gender-based. Can you speak to that issue? Yes, and I'm glad you raised that, Your Honor. Appellants very much mischaracterized Jones. Jones was decided after summary judgment, so after full discovery, and the court there found the plaintiff failed to present any evidence whatsoever that the harassment was based on sex at all. In so doing, the court also noted that at her deposition she was asked, do you think you were harassed based on sex? And she said no or I don't know. But the court never said that answer. That in and of itself was dispositive in dismissing her case. The court said in addition to that, she's brought no evidence at all of sex-based harassment. Nichols, if you actually look at page 872 of Nichols, the elements are listed separately, that there's a subjective, excuse me, subjective understanding of harassment, that it was severe and pervasive, and that it was based on a protected characteristic. They're separate elements. They're analyzed separately. And if I may briefly, I'd also like to point the court to New York State law, which is quite clear here. New York State law, it's black letter law that it follows identical standards to Title VII. And except for the fact that New York removed the severe and pervasive requirement in 2019, this court itself has been explicitly clear in cases like EEOC versus the National Education Association of Alaska that there is no legal requirement that the hostile acts be overtly sex or gender specific in content, whether through sex or gender stereotypes or through sexualized overtures. And there's no legal – I mean, that is correct, right? It violates Title VII to harass people on the basis of sex, even if the harassment is not itself sexual. But what the EFAA says is not just conduct that violates Title VII. It has to be sexual harassment. And I'm not sure that the kind of conduct we've just described can reasonably be described as sexual harassment. I mean, California may have its own definition of what sexual harassment is. But if New York is just following Title VII, there seems to be a mismatch. Well, that case, EEOC, as well as a Supreme Court case, Onkale v. Sundowner, also says that harassing conduct need not be motivated by sexual desire. Those do talk about sex harassment. And Title VII, it is, again, black-letter law that New York State law for sex harassment follows identical standards to Title VII minus the severe and pervasive requirement. Dr. Ding brings a claim under New York sex harassment law. Those cases do discuss sex harassment. That is sex-based harassment. Take, for example, also – and it's the California Supreme Court, but similar concept – the plaintiff there felt she was being harassed. She was being belittled in her job. She was being sidelined. She was being called out in meetings. She was – the supervisor gave little gifts to everyone else but not to her. Those types of things were harassment, even though they were neutral as to her disability. But later discovered there was other evidence that supported the personnel and management decisions, which we do agree to Judge Rawlinson's question, are different from harassment. Those did support a specific bias based on her disability. So there are cases like Dr. Ding, especially where she's the only woman here, that she can't provide evidence of here's how other women were treated versus other men. She only knows how I was treated. Those are harassment cases. She did feel subjectively harassed at the time. And it can't be the fact that because she's the only woman in the C-suite that she can't establish a sex harassment claim because these defendants were smart enough to hide their animus from her and because she doesn't have a wide pool to see how they treated men versus how they treated women. All right. Just last question. If we decide that California provides a viable basis for plausible allegations, do we need to reach the New York side as well? What do you think? You do not, Your Honor. The EFAA is clear and there's case law interpreting it that is clear that at the election of the person bringing the claims, the arbitration agreement, a pre-dispute arbitration agreement, is not enforceable as to a case relating to a sexual harassment dispute. And courts have been clear and consistent saying that that means the entire case comes into court. The arbitration agreement is not enforceable as to the entire case, not just one claim. So all that to say that if Your Honor's found even one of her claims is plausibly pled, that means that the motion to compel arbitration must be denied and that the district court's decision doing so must be affirmed. All right. Thank you, counsel. Thank you, Your Honor. Let's have two minutes for rebuttal. Thank you, Your Honors. I'll try not to talk too fast. I just would want to do call out, though, that the notion that she was the only woman, what we just heard, is not true. It's not in the record, but it also is not true. And I think just a couple of key points. On the statutory interpretation piece, I think we don't read in from statutory silence additional mechanisms or rights. That's a kind of basic principle, and so that's really where we start from on reading the text that is there. We also, page 28 of our reply, cite some of the legislative history making clear that the language was intended to be narrowly interpreted and the bill was a narrow carve-out. So we put that before the court. On the six items, I think it's we've gone through this in our reply brief. I believe it's at page four to nine of our reply brief, so I don't need to belabor them. But put simply, three through six are not new or not related to sex harassment, so the only two that might be would be the e-mail. And, again, I would direct the court to review the e-mail, which doesn't talk, it talks about a phenotype in the sense of observable characteristics, such as a Wall Street investor type with U.S.-Asia public financing strategy, strong relationships with equity research, and health care specialist investors. That's what this is about. And if you took the theory that this e-mail could transform a case from a non-sexual harassment case to a harassment case based on that, any listing of two men or two people of a certain descent for a position where you're describing equality would turn the case around, and that doesn't, that's not supported by the law. I also really would direct the court to the thing they mentioned about the board wanting gender diversity is actually not in the record, the e-mail. There is deposition testimony. This is ER 297 to 299. That contradicts that claim. That contradicts that pleading in the complaint. You have the Dr. Stevens actually saying, we are looking for diversity. I was looking for diversity. Not that he was opposed to the board. At the end of the day, in this case, there are three independent bases, as I said, to reject the claim. This belonged in arbitration, as we heard. If there was some sense of harassment and we didn't know the basis, they put in national origin, they should have put in gender then, and then that could have been the right time to do it. It's not the right time after a year of arbitration. So your argument is if she had perceived gender discrimination at the time subjectively, it would have been part of the arbitration case. It certainly dovetails with her point that that's a requirement for a sexual harassment claim, but it also just goes to the point that we heard here that she felt harassed. She wasn't sure why. She put in national origin. There's no reason to not put in sex at the time. Thank you. Thank you. Thank you to all counsel for your helpful arguments. The case just argued is submitted for decision by the court. That completes our calendar for the morning. We are recessed until 9.30 a.m. tomorrow morning. All rise.
judges: RAWLINSON, MILLER, SANCHEZ